## IRVIN COLE V. THE STATE.

No. 15461.   Delivered October 26, 1932.
State's Rehearing Denied October 25, 1933.
Reported in 63 S. W. (2d) 702.

The opinion states the case.

*A. L. Lewis,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for a period of twenty years.

About midnight, a police officer observed upon one of the streets of the city of Houston a truck driven by the appellant at an excessive rate of speed. Because of such speed the appellant was stopped by the officer. The appellant said: "My God, man, I have got a man in here that is bleeding to death." The

appellant was permitted to proceed to the hospital with the officer following him. At the time he was stopped, the appellant claimed that he did not know the man; that the man had come to him at a filling station and said: "My God, man, I am bleeding to death; take me to the hospital." When the appellant and the officer reached the hospital and the wounded man was taken out of the truck, it was found that he had bled to death from a wound in his neck. Upon learning that the man was dead, the appellant began to cry and said that he knew the sister of the deceased (Jordan) and asked the officer to take or accompany him to the place where Jordan's sister lived. He also said that he did not know that he had killed Jordan; that Jordan was his best friend. At the same time, the appellant stated to the officer that he had been drinking considerably during the evening. Appellant accompanied the officers to a filling-station, where they learned that there had been heard the screams of a woman in the lumber yard. At the lumber yard they learned that two women had washed blood from their hands and clothes. The officers then went to the women and conversed with them. One of them (Miss Hill) testified in substance that she was not acquainted with the appellant but had been introduced to him by the deceased, Jordan; that in the afternoon or evening before the tragedy, the witness, another young lady, Jordan and the appellant, had gone in the latter's truck to the home of the sister of Jordan, where some drinks were taken, and where they stayed until about midnight. Upon leaving the home of Jordan's sister in the truck driven by the appellant, the guests desired to go to their homes while Cole (who was driving) insisted upon going in a different direction. Finally, Jordan removed the keys from the truck, which Cole resented, and a quarrel ensued between them. Cole insisted upon having the keys and Jordan objected. The quarrel reached the point at one time where they both removed their coats and made a demonstration as though to fight. Shortly before striking the blow which injured Jordan, the appellant said: "I would as soon cut your throat as not." Soon after this was said, Cole struck Jordan with a knife. Observing that Jordan was wounded but not realizing the extent of the wound, Miss Hill suggested that Cole take Jordan to the hospital. Jordan, at the time, was unable to walk and got in the truck with Cole and was driven away.

The arrest of the appellant took place about an hour and a half after he reached the hospital. After his arrest, according to the state's testimony, he made an effort to escape by striking

the officer in the face and jumping out of his automobile, but he was finally apprehended after a chase.

The foregoing testimony is from the state's witnesses.

Appellant introduced but one witness, whose name was Griffin, who testified that he was in company with the appellant from about noon until about six o'clock on the day of the tragedy; that together they went to the home of Mrs. Edna McClain, a sister of Jordan. While there, they danced and drank some liquor, and together they went to another place to get some liquor. In the evening, about eight o'clock, Jordan and Mrs. McClain went to get some whisky, but the witness was not able to say whether they got any or not. The witness was at the McClain home about seven or eight o'clock in the evening and the appellant was intoxicated at that time. The witness afterwards saw appellant and the deceased going in the direction of a bootlegging joint.

While at the hospital, the appellant stated that he had been drinking, and he appeared to the officer who arrested him to have been under the influence of intoxicating liquor to a certain extent. The officer gave his opinion, however, that at the time the appellant reached the hospital, his intoxication was not to such an extent that he did not know what he was doing. There seems much in the testimony supporting the theory that during the afternoon and night up to the time the fatal blow was struck, the appellant and his companions, including the deceased, had been drinking intoxicating liquor. Having reference to the time of the assault which finally resulted in the death of the deceased, it is thought that the evidence did not justify the court, in his charge to the jury, in ignoring the condition of the appellant's mind due to the recent use of intoxicating liquor, or in making comment of it adverse to the appellant. There was no previous enmity between the appellant and the deceased. They were the best of friends. The officers who testified in behalf of the State expressed the opinion that the appellant was under the influence of intoxicating liquor at the time he reached the hospital. The court was requested by the appellant to embrace in his charge an instruction embodying the substance of article 36, P. C., to the effect that temporary insanity produced by the recent use of ardent spirits might be considered in mitigation of the penalty but not as a defense to the crime. The contention of the appellant that the court was in error in refusing to give the charge requested is deemed correct, especially in view of the fact that the court embraced in his general charge the following instruction:

"Our statutes provide that intoxication produced by the voluntary recent use of ardent spirits shall not constitute any excuse in this State for the commission of crime, nor shall intoxication mitigate either the degree or the penalty of crime."

It is thought that the issue was raised by the evidence and that in declining to submit it to the jury the trial court fell into error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE. — The rehearing herein is predicated upon the affidavit of an assistant criminal district attorney of Harris county to the effect that the appellant, since perfecting his appeal, has escaped. The affidavit required by article 825, C. C. P., 1925, is not in the record. In the absence of the compliance with the statute, this court would not be warranted in granting the state's motion.

The motion for rehearing is overruled.

*Overruled.*